# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Kara Melone and Paul Melone

### DEFENDANTS
Shore Institute for Reproductive Medicine, P.C. et al.

**(b)** County of Residence of First Listed Plaintiff   Hanover County, VA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ocean County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cohen, Placitella & Roth, P.C.
127 Maple Avenue
Red Bank, NJ 07701
732-747-9003

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [X] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability   Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel &   [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability   Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine   [ ] 368 Asbestos Personal Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability   Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle   **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability   [ ] 370 Other Fraud | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury   [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability |   [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [X] 362 Personal Injury - Medical Malpractice   [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations   [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment   [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other   **Other:** | **IMMIGRATION** | | |
| |   [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education   [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| |   [ ] 555 Prison Condition | | | |
| |   [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC §1332
Brief description of cause:
action for damages for the loss or destruction of Plaintiffs' cryogenically preserved embryo

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   6/13/2023

SIGNATURE OF ATTORNEY OF RECORD
Christopher M. Placitella

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT OF NEW JERSEY

| | | |
|---|---|---|
| **KARA MELONE AND PAUL MELONE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SHORE INSTITUTE FOR REPRODUCTIVE** | ) | **CIVIL ACTION** |
| **MEDICINE, P.C.; CRYOPORT, INC.;** | ) | **NO. _____** |
| **CRYOPORT SYSTEMS, LLC; ALLEN** | ) | |
| **MORGAN, MD; MEIR OLCHA, MD;** | ) | |
| **PHILIP LESORGEN, MD; KELLY HYNES,** | ) | |
| **LPN; KERRI KING-HURLEY; JOHN DOES,** | ) | |
| **MD #1-10; JANE ROES, RN/NP/PA #1-10;** | ) | |
| **RON AND JANE DOES, #1-10; AND ABC** | ) | |
| **CORPORATION #1-10** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR A JURY TRIAL

### Table of Contents

| | | |
|---|---|---|
| I. | PARTIES | 2 |
| II. | JURISDICTION AND VENUE | 4 |
| III. | NATURE OF THE CASE | 5 |
| IV. | FACTUAL ALLEGATIONS | 6 |
| A. | The Melones' Plan to Create their Family | 6 |
| B. | The Transport | 8 |
| C. | The Aftermath | 9 |
| D. | The Morgan Defendants | 10 |
| E. | The IVF Industry | 13 |
| V. | FIRST CAUSE OF ACTION – NEGLIGENCE– THE MORGAN DEFENDANTS | 13 |
| VI. | SECOND CAUSE OF ACTION – GROSS NEGLIGENCE – THE MORGAN DEFENDANTS | 15 |
| VII. | THIRD CAUSE OF ACTION – WILLFUL AND WANTON MISCONDUCT – THE MORGAN DEFENDANTS | 17 |

VIII. FOURTH CAUSE OF ACTION – RECKLESS MISCONDUCT – THE MORGAN
      DEFENDANTS                                                          19

IX.   FIFTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL
      DISTRESS – THE MORGAN DEFENDANTS                                   21

X.    SIXTH CAUSE OF ACTION – NEGLIGENCE– CRYOSTORK                      23

XI.   SEVENTH CAUSE OF ACTION – GROSS NEGLIGENCE – CRYOSTORK             24

XII.  EIGHTH CAUSE OF ACTION – WILLFUL AND WANTON MISCONDUCT –
      CRYOSTORK                                                          26

XIII. NINTH CAUSE OF ACTION – RECKLESS MISCONDUCT – CRYOSTORK            27

XIV.  TENTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL
      DISTRESS – CRYOSTORK                                               29

XV.   ELEVENTH CAUSE OF ACTION – NEGLIGENT UNDERTAKING – CRYOSTORK
                                                                         30

XVI.  TWELVTH CAUSE OF ACTION - FRAUD AND DECEIT – MORGAN FERTILITY 31

XVII. THIRTEENTH CAUSE OF ACTION - FRAUD AND DECEIT – CRYOSTORK          32

XVIII. FOURTEENTH CAUSE OF ACTION - BREACH OF CONTRACT – MORGAN
       FERTILITY                                                         34

XIX.  FIFTEENTH CAUSE OF ACTION - BREACH OF CONTRACT – CRYOSTORK         35

XX.   SIXTEENTH CAUSE OF ACTION – MEDICAL MALPRACTICE – THE MORGAN
      DEFENDANTS                                                         35

XXI.  SEVENTEENTH CAUSE OF ACTION – MEDICAL MALPRACTICE – CRYOSTORK
                                                                         36

XXII. EIGHTEENTH CAUSE OF ACTION – PUNITIVE DAMAGES                      37

XXIII. DAMAGES                                                           38

XXIV. DEMAND FOR JURY TRIAL                                              39

XXV.  PRAYER                                                             39

COME NOW Plaintiffs KARA MELONE and PAUL MELONE, by and through the
undersigned counsel, bring this Complaint against Defendants Shore Institute for Reproductive
Medicine, P.C.; Cryoport, Inc.; Cryoport Systems, LLC; Allen Morgan, MD; Meir Olcha, MD;
Philip Lesorgen, MD; Kelly Hynes, LPN; Kerri King-Hurley; John Does, MD #1-10; Jane Roes,
RN/NP/PA #1-10; Ron and Jane Does, #1-10; ABC Corporation #1-10 (collectively,
"Defendants") and allege as follows:

## PARTIES

1.      Plaintiff Kara Melone is over the age of eighteen and a resident and citizen of Virginia.

2.      Plaintiff Paul Melone is over the age of eighteen and a resident and citizen of Virginia.

3.      Shore Institute for Reproductive Medicine, P.C. (aka Morgan Fertility and Reproductive Medicine) (hereinafter "Morgan Fertility") is a New Jersey entity. Morgan Fertility may be served through its registered agent, Allen Morgan, MD at its registered office and principal business address of 475 Route 70, Lakewood, New Jersey 08701.

4.      Cryoport, Inc. is a Nevada corporation duly registered to conduct business in New Jersey. It may be served through its registered agent, Corporation Service Company, at Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing, New Jersey 08628.

5.      Cryoport Systems, LLC (d/b/a CryoStork) is a California limited liability company duly registered to conduct business in New Jersey. It may be served through its registered agent, Corporation Service Company, at Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing, New Jersey 08628.

6.      Cryoport, Inc. and Cryoport Systems, LLC are collectively referred to below as "CryoStork."

7.      Allen Morgan, MD is a medical doctor licensed in New Jersey who may be served at his place of business at 475 Route 70, Lakewood, New Jersey 08701 or wherever he may be found within the state.

8.      Meir Olcha, MD is a medical doctor licensed in New Jersey who may be served at his place of business of 475 Route 70, Lakewood, New Jersey 08701 or wherever he may be found within the state.

9.      Philip Lesorgen, MD is a medical doctor licensed in New Jersey who may be served at his place of business of 475 Route 70, Lakewood, New Jersey 08701 or wherever he may be found within the state.

10.      Kelly Hughes, LPN is a licensed professional nurse in New Jersey who may be served at her place of business of 475 Route 70, Lakewood, New Jersey 08701 or wherever she may be found within the state.

11.      Kerri King-Hurley is an embryologist in New Jersey who may be served at her place of business of 475 Route 70, Lakewood, New Jersey 08701 or wherever she may be found within the state.

12.      Upon information and belief, John Does, MD #1-10; Jane Roes, RN/NP/PA #1-10; Ron and Jane Does, #1-10; ABC Corporation #1-10 are residents of the state of New Jersey and employed by or performed services for Morgan Fertility.

13.      Morgan Fertility, Dr. Allen Morgan, MD; Dr. Meir Olcha, MD; Dr. Philip Lesorgen, MD; Kelly Hynes; Kerri King-Hurley; John Does, MD #1-10; Jane Roes, RN/NP/PA #1-10; Ron and Jane Does, #1-10; and ABC Corporation #1-10 are all collectively referred to below as the "Morgan Defendants."

14.      None of the Defendants was or is a state employee entitled to immunity under the New Jersey Tort Claims Act, or any other immunity from liability.

## JURISDICTION AND VENUE

15.      The Court has original subject matter jurisdiction over this civil action as it is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as required under 28 U.S.C. §1332.

16.     Venue is properly established in this Court pursuant to 28 U.S.C. §1391 as this is the judicial district in which Defendant Morgan Fertility resides, where it is subject to the court's personal jurisdiction, and where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

17.     The CryoStork Defendants have done business in this State, regularly and continuously conduct and transact business in this State, are licensed in this State, have committed one or more tortious acts that caused harm and losses to Plaintiffs within this State, have performed acts within this State giving rise to harm and losses within this State, which acts subject each Defendant to the jurisdiction of this Court.

18.     Defendants carried out their actions and conduct as more fully described below through their respective offices in this State, by authorized agents in this State, by servants and employees who acted in the course and scope of their employment and authority, and in furtherance of the business and profits of the Defendants.

19.     None of the Defendants are residents of the State of Virginia and therefore complete diversity exists between the parties.

### <u>NATURE OF THE CASE</u>

20.     This is an action for harm and losses suffered by Plaintiffs as a direct and proximate result of Defendants' negligence, gross negligence, and breach of contract in connection with the retrieval, cryopreservation, storage, and transport of Plaintiffs' embryo for in vitro fertilization (IVF).

21.     Assistive reproductive technology providers like Morgan Fertility and the other Morgan Defendants operate without material oversight or regulation which allows them to bypass basic standards for the IVF process.

22.     Plaintiffs' harm and losses were avoidable, and they bring this action for their damages and also to prevent others from experiencing the same fate.

### FACTUAL ALLEGATIONS

**A.  The Melones' Plan to Create their Family**

23.     Like so many couples in today's world, the Melones struggled with infertility and sought assistive reproductive technology to create their family. They carefully selected Dr. Allen Morgan, MD and Morgan Fertility as their IVF provider and entrusted Dr. Morgan and Morgan Fertility to facilitate the process safely and carefully.

24.     On January 17, 2017, Dr. Morgan was able to harvest seven oocytes (eggs) from Kara Melone. Upon fertilization, three of those reached the blastocyst stage and were cryogenically preserved for use in IVF.

25.     Upon information and belief, the embryos were cryopreserved on the tip of a "straw" similar to the one pictured below:[1]



---

[1] For an example of a process for vitrification (a method of cryopreservation) and thawing, see YouTube, Protocol2020 English, *available at* https://www.youtube.com/watch?time_continue=135&v=XEy9zCKBRnU&feature=emb_logo (last visited June 13, 2023).

26.     The Melones began to see their dreams come true. One of the embryos was thawed and implanted on March 20, 2017, and another on March 15, 2019. Both of those resulted in successful pregnancies and live births.

27.     The Melones relocated their family to Richmond, Virginia, and in January 2020 established care at Shady Grove Fertility for their IVF procedure with their last cryopreserved embryo.

28.     Dr. Shaw at Shady Grove did not immediately agree to accept transfer of the Melones' embryo and perform the thaw and implantation procedure.

29.     Shady Grove obtained records of Morgan Fertility's process, reviewed those, and determined the systems used were compatible and that Shady Grove could thaw and transfer the embryo safely.

30.     After Shady Grove agreed to accept transfer of the embryo and perform the IVF procedure, the next step was to move the embryo from Morgan Fertility in New Jersey to Shady Grove in Virginia.

31.     Upon information and belief, Morgan Fertility or another Morgan Defendant packed the straw for transport.

32.     Upon information and belief, Morgan Fertility or another Morgan Defendant stored the embryos in the same tank, which was opened and closed repeatedly between the time the embryos were preserved and the time the embryo was transferred to Shady Grove.

33.     Upon information and belief, Defendant Kerri King-Hurley (and/or a Jane Doe with the initials "KK"), embryologist at Morgan Fertility, performed fertilization of Mrs. Melone's eggs, monitored the development of the blastocysts, thawed the two embryos that the Melones used for IVF with Morgan Fertility, and performed other acts affecting the Melones' embryos.

### B.  **The Transport**

34.    The Melones engaged CryoStork – a specialty facilitator of medical shipping service – to transport the embryo from New Jersey to Virginia.[2]

35.    Cryostork explains its service as transportation of "highly valuable reproductive materials through dedicated medical transport services[.]"[3]

36.    CryoStork advertises "nonstop monitoring" and "steadfast protection."[4]  CryoStork offers "certainty" to would-be parents like the Melones, saying "When it can't be replaced, TRUST CRYOPORT."[5]

37.    CryoStork asks vulnerable would-be parents for their trust, and it financially benefits them in providing a service built on that trust.

38.    CryoStork agreed to ship the embryo from Morgan Fertility to Shady Grove. The pickup was initially scheduled for March 9 and the delivery on March 10.

39.    CryoStork documentation reflects that the transport took two days instead of one. CryoStork picked up the embryo on March 8, 2021, and delivered it to Shady Grove on March 10, 2021.

40.    CryoStork's shipping log also reflects that the temperature of the container was not kept constant.  During the two-day transport period, the log reflects close to ten-degree fluctuations in temperature.

---

[2] The contract materials related to Crystork's transport of the Melones' embryo are ambiguous as to the precise legal entity entering the contract. Accordingly, Plaintiffs have named both Cryostork, Inc. and Cryostork Systems, LLC in this complaint.
[3] https://mycryostork.com/ (last visited 06/12/2023).
[4] *Id.*
[5] *Id;* https://mycryostork.com/why-cryostork/ (last visited 06/07/2023).

41.     During transport the container was not secured with the level of care CryoStork promised. The container sat tilted at more than a 45-degree angle for a cumulative time of period of more than 24 hours.

42.     Upon information and belief, if the straw was not already damaged at Morgan Fertility, the shipping conditions caused the damage to the seal.

43.     Shady Grove received what it believed to be the embryo frozen in a straw on March 10, 2021.

**C.  The Aftermath**

44.     IVF is a demanding process for a woman.  Mrs. Melone not only underwent the egg retrieval process, but she then also had to prepare her body for the implantation procedure.

45.     Mrs. Melone underwent the medical treatment and medication necessary to effectuate the IVF transfer, but the transfer procedure never occurred.

46.     Shady Grove contacted Mrs. Melone on the morning of the scheduled transfer procedure (June 14, 2021) and informed her that, despite three separate embryologists thoroughly searching, they were unable to find an embryo to recover.  According to the Shady Grove doctor, the embryologists had noted "irregular sealing on the straw" and stated that they believed the loss and damage happened at Morgan Fertility.

47.     The Melones had no means of knowing their embryo had been lost or destroyed prior to June 14, 2021.

48.     Morgan Fertility says on its website, "At Morgan Fertility and Reproductive Medicine, everything we do is for your success. We are proud to be at the forefront of cutting-edge scientific advancements in successfully treating infertility. Our entire team is dedicated to

Page 9 of 40

providing to a compassionate patient care experience that exceeds expectations at every opportunity."[6]

49.     The website further boasts, "If you're searching for the best fertility or infertility clinic in NJ, we'd like to introduce you to our clinical team," and claims that the clinic produces "the highest possible success rates."[7]

50.     Based on the clinic's representations, the Melones expected exceptional care from Morgan Fertility on every step of their IVF journey.  They put their full faith and trust in both Morgan Fertility and CryoStork to live up to the representations made concerning their services. The Melones relied on them for their expertise and claims to superior results.

51.     The Melones' embryo was lost or destroyed due to causes that have not been explained. This loss will always weigh on their minds and cause them heartache and pain.

52.     The Melones' viewed the embryo as a conceived life, and they mourn the loss of the possibility of bringing that life into the world as well as the loss of the embryo itself.

53.     The loss of the Melones' embryo has caused them substantial physical and emotional pain, distress, and suffering.

54.     In addition to these losses, the Melones spent significant funds to achieve a pregnancy with the embryo.

**D.  The Morgan Defendants**

55.     Defendant, Morgan Fertility provided medical services to the Melones directly and through its physicians, nurses, agents, employees, and other healthcare professionals. Upon information and belief, Morgan Fertility was the corporate entity under which the individual

---

[6] https://morganfertility.com (last visited 06/07/2023)
[7] http://morganfertility.com/your-care-team (last visited 06/07/2023)

Defendants named herein operated. Upon information and belief, Defendants Dr. Allen Morgan, Dr. Meir Olcha, Dr. Philip Lesorgen, practiced out of, were employed by, partners in, owners of, agents of, or otherwise associated with Defendant Morgan Fertility, at all relevant times. Upon information and belief, Defendants Kelly Hynes; and Kerri King-Hurley practiced out of, were employed by, agents of, or otherwise associated with Defendant Morgan Fertility, at all relevant times.

56.     At all times material to this matter, Defendants, John Does, MD, #1-10 are fictitious names of physicians, and/or other health care providers, duly licensed to practice in the State of New Jersey, and was/were engaged in the practice of his/her profession at Morgan Fertility. Defendants John Does, MD were treating physicians and/or consultants in IVF procedures, who participated in the care of Mrs. Melone and the services provided to the Melones by Morgan Fertility. Dr. Morgan, Dr. Olcha, Dr. Lesorgen, and/or John Does, MD #1-10 were responsible for providing, supervising, and managing the medical care rendered at Morgan Fertility to Kara Melone and the Melones' embryos, including harvesting, fertilizing, cryopreserving, storing, and packing the embryos for shipment.  These doctors undertook to diagnose, treat, and otherwise care for the Melones and their embryo. The true names and identities of John Does, MD are unknown, despite diligent effort made at ascertaining their identities.

57.     Upon information and belief, Dr. Allen Morgan, Dr. Meir Olcha, Dr. Philip Lesorgen, John Does, MD #1-10, Kelly Hynes; and Kerri King-Hurley and other unknown Morgan Defendants developed the practices, policies, and procedures followed by the Morgan Defendants in rendering medical care and services to the Melones and were responsible for ensuring that the Morgan Defendants followed such practices, policies, and procedures as well as supervising and managing others under their purview.

58.     At all times material to this matter, Defendants, Jane Roes, RN/NP/PA #1-10 was/were nurse(s), nurse practitioners, physician's assistants, and/or other health care provider(s), duly licensed to practice in the State of New Jersey, and was/were engaged in the practice of his/her/their profession at Morgan Fertility in New Jersey.  Defendants Jane Roes, RN/NP/PA was/were treating physicians' assistants, nurse practitioners, nurses, embryologists and/or other medical providers who evaluated and treated Mrs. Melone during the relevant time and/or participated in the services provided with respect to the Melones' embryos, under the supervision of the aforementioned Defendant physicians and John Does, MD, Ms. Hynes, and/or Ms. King-Hurley.  Upon information and belief, Jane Roes, RN/NP/PA participated in the harvesting, fertilizing, cryopreserving, storing, and packing the embryos for shipment.  The true names and identities of Jane Roes, RN/NP/PA are unknown, despite diligent effort made at ascertaining their identities.

59.     At all times material to this matter, Defendants, Ron and Jane Does, #1-10 was/were technicians, or other medical assistants, other health care provider(s) duly licensed to practice in the State of New Jersey, and was/were engaged in the practice of his/her/their profession at Morgan Fertility in New Jersey.  Defendants, Ron and Jane Does, #1-10 provided medical treatment or facilitated medical treatment for Mrs. Melone and the Melones' embryo during the relevant time period by participating in harvesting, fertilizing, cryopreserving, storing, and packing the embryos for shipment.  Upon information and belief, these individuals acted under the direction and supervision of Dr. Morgan, Dr. Olcha, Dr. Lesorgen, John Does, MD #1-10, Ms. Hynes, and/or Ms. King-Hurley. The true names and identities of Ron and Jane Does, #1-10 are unknown, despite diligent effort made at ascertaining their identities.

60.     At all times material to this matter, Defendant, ABC Corporations #1-10 was/were a professional association(s) and/or a partnership(s) and/or a corporation(s) and/or a medical group(s) and/or another type of entity, duly licensed to operate in the State of New Jersey, and were so operating within the State of New Jersey.  Defendant ABC Corporations #1-10 worked in concert with Morgan Fertility to perform the acts attributed to the Morgan Defendants herein, including storing the cryopreserved embryos. The true names and identities of other ABC Corporations are unknown, despite diligent effort made at ascertaining their identities.

### E.  The IVF Industry

61.     The IVF industry (including retrieval, storage, and transport) has emerged as a multi-billion-dollar industry. Yet, required industry-wide cryopreservation management, accountability, and control practices have not been implemented to manage this growth. Although the facilities are handling invaluable human cells, most of the industry uses antiquated manual labeling, identification, record keeping and tracking systems. The industry remains virtually unregulated, putting women, families, and the public at risk.

62.     While cryopreservation of human material is expanding, cryopreservation management practices have not evolved to keep up with this growth. Technology, record keeping, management and oversight has not been standardized, regulated, or required. Errors are likely to continue unless the industry is held responsible and the Defendants, in this case, accountable.

### FIRST CAUSE OF ACTION – NEGLIGENCE– THE MORGAN DEFENDANTS

63.     Plaintiffs re-allege each and every allegation of this Complaint.

64.     The Morgan Defendants had a duty to the Plaintiffs to exercise reasonable care in their representations, marketing, supply, sale, and provision of their services; Defendants breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

65.     The Morgan Defendants' negligence included, but was not limited to, the following:

a) Failing to safeguard the Melones' frozen embryo.

b) Failing to properly store the Melones' frozen embryo.

c) Failing to securely and safely package the Melones' embryo for transport.

d) Failing to implement and follow strict safe and secure practices for the preservation of frozen embryos.

e) Failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos.

f) Failing to ensure the secure transportation of the frozen embryo from their facility to another facility under conditions and oversight that protected the viability of the frozen embryo.

g) Failing to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos.

h) Relying on antiquated manual systems for labeling, tracking, storing, and transporting frozen embryos.

i) Failing to implement software and hardware technology to store, trace and maintain frozen embryos.

j) Failing to ensure that frozen embryos are only transferred to trained and qualified labs who can thaw eggs from Morgan Fertility pursuant to the requisite specialized procedures.

k) Misrepresenting the success rate of frozen embryo survivability.

l) Misrepresenting and falsely advertising the nature and quality of Morgan Fertility's services.

m) Generally using unreasonable, careless, and negligent conduct in the sale and performance of Morgan Fertility's preservation and storage services.

66.     Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

67.     Morgan Fertility is liable for the actions of the other Morgan Defendants under a theory of respondeat superior because the other Morgan Defendants acted within the scope of employment or agency with Morgan Fertility.

68.     As a direct and proximate result of the unreasonable, careless and negligent conduct of the Morgan Defendants as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

69.     Plaintiffs request judgment against the Morgan Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

### SECOND CAUSE OF ACTION – GROSS NEGLIGENCE – THE MORGAN DEFENDANTS

70.      Plaintiffs re-allege each and every allegation of this Complaint.

71.     The Morgan Defendants had a duty to the Plaintiffs to exercise reasonable care in their representations, marketing, supply, sale, and provision of their services. Defendants breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

72.     Defendants' breach of duty was not the result of mistaken judgment but was the natural and probable result of the failure to exercise slight care or diligence.

73.     The Morgan Defendants' gross negligence included, but was not limited to, the following:

a)  Failing to exercise slight care or diligence to safeguard the Melones' frozen embryo.

b)  Failing to exercise slight care or diligence to properly store the Melones' frozen embryo.

c)  Failing to exercise slight care or diligence to securely and safely package the Melones' embryo for transport.

d)  Failing to exercise slight care or diligence to implement and follow strict safe and secure practices for the preservation of frozen embryos.

d)  Failing to exercise slight care or diligence to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos.

e)  Failing to exercise slight care or diligence to ensure the secure transportation of the frozen embryo from their facility to another facility under conditions and oversight that protected the viability of the frozen embryo.

f)  Failing to exercise slight care or diligence to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos.

g)  Without slight care or diligence, relying on antiquated manual systems for labeling, tracking, storing, and transporting frozen embryos.

h)  Failing to exercise slight care or diligence to implement software and hardware technology to store, trace and maintain frozen embryos.

i)  Failing to exercise slight care or diligence to ensure that frozen embryos are only transferred to trained and qualified labs who can thaw eggs from Morgan Fertility pursuant to the requisite specialized procedures.

j)  Misrepresenting the success rate of frozen embryo survivability without slight care or diligence.

k)  Misrepresenting and falsely advertising the nature and quality of Morgan Fertility's services without slight care or diligence.

l)  Failing to exercise even slight care or diligence in the sale and performance of preservation and storage services.

74.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

75.    Morgan Fertility is liable for the actions of the other Morgan Defendants under a theory of respondeat superior because the other Morgan Defendants acted within the scope of employment or agency with Morgan Fertility.

76.    As a direct and proximate result of the Morgan Defendants' gross negligence as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

77.     Plaintiffs request judgment against the Morgan Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

### THIRD CAUSE OF ACTION – WILLFUL AND WANTON MISCONDUCT – THE MORGAN DEFENDANTS

78.      Plaintiffs re-allege each and every allegation of this Complaint.

79.     The Morgan Defendants had a duty to the Plaintiffs to exercise reasonable care in their representations, marketing, supply, sale, and provision of their services. Defendants breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

80.     The Morgan Defendants have specialized knowledge of the safe handling, preservation, and transportation practices for cryopreserved embryos and knew the risks that their conduct would harm Plaintiffs.

81.     The Morgan Defendants further knew of the high value to Plaintiffs of the embryo. Defendants knew that if lost or destroyed, the embryo could not be repaired or replaced.

82.     The Morgan Defendants' breach of duty amounted to a deliberate act or omission with knowledge of a high degree of probability of harm to Plaintiffs who foreseeably might be harmed by that act or omission and reckless indifference to the consequence of the act or omission.

83.     The Morgan Defendants' willful and wanton conduct included, but was not limited to, the following:

a) Deliberately failing to safeguard the Melones' frozen embryo with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

b) Deliberately failing to properly store the Melones' frozen embryo with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

c) Deliberately failing to securely and safely package the Melones' embryo for transport with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

d) Deliberately failing to implement and follow strict safe and secure practices for the preservation of frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

e) Deliberately failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

e) Deliberately failing to ensure the secure transportation of the frozen embryo from their facility to another facility under conditions and oversight that protected the viability of the frozen embryo with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

f) Deliberately failing to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

g) Deliberately relying on antiquated manual systems for labeling, tracking, storing, and transporting frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

h) Deliberately failing to implement software and hardware technology to store, trace and maintain frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

i) Deliberately failing to ensure that frozen embryos are only transferred to trained and qualified labs who can thaw eggs from Morgan Fertility pursuant to the requisite specialized procedures with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

j) Deliberately misrepresenting the success rate of frozen embryo survivability with knowledge of a high degree of probability of harm to the Plaintiffs and reckless indifference to the consequences.

k) Deliberately misrepresenting and falsely advertising the nature and quality of Morgan Fertility's services with knowledge of a high degree of probability of harm to the Plaintiffs and reckless indifference to the consequences.

l) Deliberate acts and omissions in the sale and performance of their preservation and storage services with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

84.     Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

85.     Morgan Fertility is liable for the actions of the other Morgan Defendants under a theory of respondeat superior because the other Morgan Defendants acted within the scope of employment or agency with Morgan Fertility.

86.     As a direct and proximate result of the Morgan Defendants' willful and wanton conduct as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

87.     Plaintiffs request judgment against the Morgan Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

### FOURTH CAUSE OF ACTION – RECKLESS MISCONDUCT – THE MORGAN DEFENDANTS

88.      Plaintiffs re-allege each and every allegation of this Complaint.

89.     The Morgan Defendants had a duty to the Plaintiffs to exercise reasonable care in their representations, marketing, supply, sale, and provision of their services. Defendants breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

90.     The Morgan Defendants have specialized knowledge of the safe handling, preservation, and transportation practices for cryopreserved embryos and knew the risks that their conduct would harm Plaintiffs.

91.     The Morgan Defendants further knew of the high value to Plaintiffs of the embryo. Defendants knew that if lost or destroyed, the embryo could not be repaired or replaced.

92.     The Morgan Defendants' breach of duty amounted to highly unreasonable conduct, involving not merely simple, or even inexcusable negligence, but an extreme departure from standards of ordinary care, and which presented a danger to Plaintiffs that was either known to Defendants or is so obvious Defendants must have been aware of it.

93.     The Morgan Defendants' reckless misconduct included, but was not limited to, the

following:

a)  Failing to safeguard the Melones' frozen embryo in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to Defendant.

b)  Failing to properly store the Melones' frozen embryo in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to Defendant.

c)  Failing to securely and safely package the Melones' embryo for transport in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to Defendant.

d)  Failing to implement and follow strict safe and secure practices for the preservation of frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

e)  Failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

f)  Failing to ensure the secure transportation of the frozen embryo from their facility to another facility under conditions and oversight that protected the viability of the frozen embryo in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to Defendant.

g)  Failing to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

h)  Relying on antiquated manual systems for labeling, tracking, storing, and transporting frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

i)  Failing to implement software and hardware technology to store, trace and maintain frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

j)  Failing to ensure that frozen embryos are only transferred to trained and qualified labs who can thaw eggs from Morgan Fertility pursuant to the requisite specialized procedures in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

k)  Misrepresenting the success rate of frozen embryo survivability in an extreme departure from the standard of care, thereby misleading Plaintiffs in a way that was either known or obvious to Defendant.

l)  Misrepresenting and falsely advertising the nature and quality of Morgan Fertility's services in an extreme departure from the standard of care, thereby misleading Plaintiffs in a way that was either known or obvious to Defendant.

m)  Acts and omissions in the sale and performance of its preservation and storage services in an extreme departure from the standard of care, thereby presenting a danger to the embryo and/or misleading Plaintiffs in a way that was either known or obvious to Defendant.

94.     Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

95.     Morgan Fertility is liable for the actions of the other Morgan Defendants under a theory of respondeat superior because the other Morgan Defendants acted within the scope of employment or agency with Morgan Fertility.

96.     As a direct and proximate result of the Morgan Defendants' reckless misconduct as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

97.     Plaintiffs request judgment against the Morgan Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

**FIFTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – THE MORGAN DEFENDANTS**

98.      Plaintiffs re-allege each and every allegation of this Complaint.

99.     The Morgan Defendants had a duty to the Plaintiffs to exercise reasonable care in their representations, marketing, supply, sale, and provision of their services. Defendants breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

100.    Because IVF is a sensitive and emotional process, it was foreseeable to the Morgan Defendants that negligent destruction of Plaintiffs' embryo would cause serious mental distress to Plaintiffs, who were depending on the Morgan Defendants to safely fertilize, cryopreserve, and store their embryos.

101.    The Morgan Defendants knew of the high value to Plaintiffs of the embryo. Defendants knew that if lost or destroyed, the embryo could not be repaired or replaced.

102.    Plaintiffs suffered serious mental and emotional distress and anguish as a result of the Morgan Defendants' loss or destruction of their embryo.

103.    The Morgan Defendants' negligent infliction of emotional distress included, but was not limited to, the following:

a) Failing to safeguard the Melones' frozen embryo.

b) Failing to properly store the Melones' frozen embryo.

c) Failing to implement and follow strict safe and secure practices for the preservation of frozen embryos.

d) Failing to securely and safely package the Melones' embryo for transport.

d) Failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos.

e) Failing to ensure the secure transportation of the frozen embryo from their facility to another facility under conditions and oversight that protected the viability of the frozen embryo.

f) Failing to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos.

g) Relying on antiquated manual systems for labeling, tracking, storing, and transporting frozen embryos.

h) Failing to implement software and hardware technology to store, trace and maintain frozen embryos.

i) Failing to ensure that frozen embryos are only transferred to trained and qualified labs who can thaw eggs from Morgan Fertility pursuant to the requisite specialized procedures.

j)   Misrepresenting the success rate of frozen embryo survivability.

k)   Misrepresenting and falsely advertising the nature and quality of Morgan Fertility's services.

l)   Generally using unreasonable, careless, and negligent conduct in the sale and performance of its preservation and storage services.

104.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

105.    Morgan Fertility is liable for the actions of the other Morgan Defendants under a theory of respondeat superior because the other Morgan Defendants acted within the scope of employment or agency with Morgan Fertility.

106.    As a direct and proximate result of the unreasonable, careless and negligent conduct of the Morgan Defendants as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

107.    Plaintiffs request judgment against the Morgan Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## SIXTH CAUSE OF ACTION – NEGLIGENCE– CRYOSTORK

108.    Plaintiffs re-allege each and every allegation of this Complaint.

109.    CryoStork had a duty to the Plaintiffs to exercise reasonable care in its representations, marketing, supply, sale, and provision of its products and services. Defendant breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

110.    CryoStork's negligence included, but was not limited to, the following:

a)   Failing to safeguard the Melones' frozen embryo.

b) Failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos.

c) Failing to ensure the secure transportation of the frozen embryo from Morgan Fertility to Shady Grove under conditions and oversight that protected the viability of the frozen embryo.

d) Failing to promulgate and follow rules and procedures for the proper handling of frozen embryos.

e) Misrepresenting the success rate of frozen embryo survivability upon transport.

f) Misrepresenting and falsely advertising the nature and quality of CryoStork's services.

g) Generally using unreasonable, careless, and negligent conduct in the sale and performance of its storage and transportation services.

111.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

112.    As a direct and proximate result of the unreasonable, careless and negligent conduct of CryoStork as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

113.    Plaintiffs request judgment against CryoStork for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## SEVENTH CAUSE OF ACTION – GROSS NEGLIGENCE – CRYOSTORK

114.     Plaintiffs re-allege each and every allegation of this Complaint.

115.    CryoStork had a duty to the Plaintiffs to exercise reasonable care in its representations, marketing, supply, sale, and provision of its products and services. Defendant breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

116.     Defendant's breach of duty was not the result of mistaken judgment but was the natural and probable result of the failure to exercise slight care or diligence.

117.     CryoStork's gross negligence included, but was not limited to, the following:

a)  Failing to exercise slight care or diligence to safeguard the Melones' frozen embryo.

d)  Failing to exercise slight care or diligence to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos.

e)  Failing to exercise slight care or diligence to ensure the secure transportation of the frozen embryo from Morgan Fertility to Shady Grove under conditions and oversight that protected the viability of the frozen embryo.

f)  Failing to exercise slight care or diligence to promulgate and follow rules and procedures for the proper handling of frozen embryos.

g)  Misrepresenting the success rate of frozen embryo survivability upon transport without slight care or diligence.

h)  Misrepresenting and falsely advertising the nature and quality of CryoStork's services without slight care or diligence.

i)  Failing to exercise even slight care or diligence in the sale and performance of its preservation and storage services.

118.     Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

119.     As a direct and proximate result of CryoStork's gross negligence as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

120.     Plaintiffs request judgment against CryoStork for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## EIGHTH CAUSE OF ACTION – WILLFUL AND WANTON MISCONDUCT – CRYOSTORK

121.    Plaintiffs re-allege each and every allegation of this Complaint.

122.    CryoStork had a duty to the Plaintiffs to exercise reasonable care in its representations, marketing, supply, sale, and provision of its products and services. Defendant breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

123.    Defendant has specialized knowledge of the safe handling, preservation, and transportation practices for cryopreserved embryos and knew the risks that its conduct would harm Plaintiffs.

124.    Defendant further knew of the high value to Plaintiffs of the embryo. Defendant knew that if lost or destroyed, the embryo could not be repaired or replaced.

125.    Defendant's breach of duty amounted to a deliberate act or omission with knowledge of a high degree of probability of harm to Plaintiffs who foreseeably might be harmed by that act or omission and reckless indifference to the consequence of the act or omission.

126.    CryoStork's willful and wanton conduct included, but was not limited to, the following:

   a) Deliberately failing to safeguard the Melones' frozen embryo with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

   b) Deliberately failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

   c) Deliberately failing to ensure the secure transportation of the frozen embryo from Morgan Fertility to Shady Grove under conditions and oversight that protected the viability of the frozen embryo with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

d) Deliberately failing to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos with knowledge of a high degree of probability of harm to the embryos and reckless indifference to the consequences.

e) Deliberately misrepresenting the success rate of frozen embryo survivability upon transport with knowledge of a high degree of probability of harm to the Plaintiffs and reckless indifference to the consequences.

f) Deliberately misrepresenting and falsely advertising the nature and quality of CryoStork's services with knowledge of a high degree of probability of harm to the Plaintiffs and reckless indifference to the consequences.

g) Deliberate acts and omissions in the sale and performance of its preservation and storage services with knowledge of a high degree of probability of harm to the embryo and reckless indifference to the consequences.

127. Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

128. As a direct and proximate result of CryoStork's willful and wanton conduct as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

129. Plaintiffs request judgment against CryoStork for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## NINTH CAUSE OF ACTION – RECKLESS MISCONDUCT – CRYOSTORK

130. Plaintiffs re-allege each and every allegation of this Complaint.

131. CryoStork had a duty to the Plaintiffs to exercise reasonable care in its representations, marketing, supply, sale, and provision of its products and services. Defendant breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

132.   Defendant has specialized knowledge of the safe handling, preservation, and transportation practices for cryopreserved embryos and knew the risks that its conduct would harm Plaintiffs.

133.   Defendant further knew of the high value to Plaintiffs of the embryo. Defendant knew that if lost or destroyed, the embryo could not be repaired or replaced.

134.   Defendant's breach of duty amounted to highly unreasonable conduct, involving not merely simple, or even inexcusable negligence, but an extreme departure from standards of ordinary care, and which presented a danger to Plaintiffs that was either known to Defendant or is so obvious Defendant must have been aware of it.

135.   CryoStork's reckless misconduct included, but was not limited to, the following:

a)   Failing to safeguard the Melones' frozen embryo in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to Defendant.

d)   Failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

e)   Failing to ensure the secure transportation of the frozen embryo from Morgan Fertility to Shady Grove under conditions and oversight that protected the viability of the frozen embryo in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to Defendant.

f)   Failing to promulgate and follow rules and procedures for the proper handling of frozen embryos in an extreme departure from the standard of care, thereby presenting a danger to the embryos that was either known or obvious to Defendant.

g)   Misrepresenting the success rate of frozen embryo survivability upon transport in an extreme departure from the standard of care, thereby misleading Plaintiffs in a way that was either known or obvious to Defendant.

h)   Misrepresenting and falsely advertising the nature and quality of CryoStork's services in an extreme departure from the standard of care, thereby misleading Plaintiffs in a way that was either known or obvious to Defendant.

i) Acts and omissions in the sale and performance of its preservation and storage services in an extreme departure from the standard of care, thereby presenting a danger to the embryo and/or misleading Plaintiffs in a way that was either known or obvious to Defendant.

136.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

137.    As a direct and proximate result of CryoStork's reckless misconduct as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

138.    Plaintiffs request judgment against CryoStork for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## TENTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – CRYOSTORK

139.     Plaintiffs re-allege each and every allegation of this Complaint.

140.    CryoStork had a duty to the Plaintiffs to exercise reasonable care in its representations, marketing, supply, sale, and provision of its products and services. Defendant breached this duty, and the breach of that duty constituted a proximate cause of Plaintiffs' harm and losses.

141.    Because IVF is a sensitive and emotional process, it was foreseeable to CryoStork that negligent destruction of Plaintiffs' embryo would cause serious mental distress to Plaintiffs, who were depending on CryoStork to safely transport their embryo under controlled conditions.

142.    CryoStork knew of the high value to Plaintiffs of the embryo. Defendants knew that if lost or destroyed, the embryo could not be repaired or replaced.

143.    Plaintiffs suffered serious mental distress, emotional upset, and anguish as a result of CryoStork's loss or destruction of their embryo.

144.    CryoStork's negligent infliction of emotional distress included, but was not limited to, the following:

a)  Failing to safeguard the Melones' frozen embryo.

b)  Failing to implement and follow strict safe and secure practices and protocols for handling and transporting frozen embryos.

c)  Failing to ensure the secure transportation of the frozen embryo from Morgan Fertility to Shady Grove under conditions and oversight that protected the viability of the frozen embryo.

d)  Failing to promulgate and follow rules and procedures for the proper handling of frozen embryos.

e)  Misrepresenting the success rate of frozen embryo survivability upon transport.

f)  Misrepresenting and falsely advertising the nature and quality of CryoStork's services.

g)  Generally using unreasonable, careless, and negligent conduct in the sale and performance of its preservation and storage services.

145.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

146.    As a direct and proximate result of the unreasonable, careless and negligent conduct of CryoStork as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

147.    Plaintiffs request judgment against CryoStork for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## ELEVENTH CAUSE OF ACTION – NEGLIGENT UNDERTAKING – CRYOSTORK

148.    Plaintiffs re-allege each and every allegation of this Complaint.

149.    CryoStork undertook to render medical transportation services to Plaintiffs which it should recognize as necessary for the protection of Plaintiffs' embryo.

150.    Cryostork failed to exercise reasonable care in this undertaking, and the failure both increased the risk of harm to the embryo and caused harm to the embryo because of Plaintiffs' reliance on CryoStork's undertaking.

151.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

152.    As a direct and proximate result of the unreasonable, careless and negligent conduct of CryoStork as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

153.    Plaintiffs request judgment against CryoStork for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## TWELVTH CAUSE OF ACTION - FRAUD AND DECEIT – MORGAN FERTILITY

154.    Plaintiffs re-allege each and every allegation of this Complaint.

155.    Morgan Fertility misrepresented its practices and protocols for handling living cells. Through these actions, Morgan Fertility fraudulently induced the Melones into entering into a contractual relationship by misrepresenting its services.

156.    Morgan Fertility knowingly made false and fraudulent statements of material fact concerning the nature and quality of their services. Morgan Fertility intended to induce Plaintiffs to rely on these statements and misrepresentations. Plaintiffs' reliance on these statements and misrepresentations was justifiable and Morgan Fertility is liable for the harm and damage caused to Plaintiffs.

157.    Morgan Fertility's false and fraudulent statements or omissions of material fact, as identified above in the factual allegations, include the following:

a)  Falsely representing its ability to safeguard the Melones' frozen embryos.

b)  Falsely representing its services for the preservation and use of frozen embryos.

c)  Falsely representing its services for handling and transport of frozen eggs.

d)  Falsely representing success and survivability rates for frozen embryos.

e)  Falsely representing that it operated under rules and procedures for the proper handling and labeling of frozen embryos.

f)  Failing to disclose the material fact that it relied on antiquated manual systems for labeling, tracking, and storing frozen embryos.

g)  Misrepresenting and falsely advertising the nature and quality of its services

158.   Alternatively, the actions and statements listed above constituted negligent misrepresentation by Morgan Ferility.

159.   Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

160.   As a direct and proximate result of the actions of Morgan Fertility as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress and monetary damages.

161.   Plaintiffs request judgment against Defendant for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## THIRTEENTH CAUSE OF ACTION - FRAUD AND DECEIT – CRYOSTORK

162.   Plaintiffs re-allege each and every allegation of this Complaint.

163.   CryoStork misrepresented its practices and protocols for handling living cells. Through these actions, CryoStork fraudulently induced the Melones into entering into a contractual relationship by misrepresenting its services.

164.   CryoStork knowingly made false and fraudulent statements of material fact concerning the nature and quality of their services. CryoStork intended to induce Plaintiffs, as well

the general public, to rely on these statements and misrepresentations; Plaintiffs' reliance on these statements and misrepresentations was justifiable and CryoStork is liable for the harm and damage caused to Plaintiffs.

165.    CryoStork's false and fraudulent statements or omissions of material fact, as fully identified above in the factual allegations, include the following:

a)  Falsely representing its ability to safeguard the Melones' frozen embryo.

b)  Falsely representing its services for handling and transport of frozen embryos.

c)  Falsely representing that it maintained precautions necessary to ensure the Melones' frozen embryo was preserved during transport.

d)  Falsely representing success and survivability rates for frozen embryos.

e)  Falsely representing that it operated under rules and procedures for the proper handling and labeling of frozen embryos.

f)  Falsely representing frozen embryos could be safely and securely transported to another laboratory for thawing.

g)  Falsely representing that it could safely and securely transport Plaintiff's frozen embryos from Morgan Fertility in New Jersey to Shady Grove in Virginia for thawing.

h)  Misrepresenting and falsely advertising the nature and quality of its services.

166.    Alternatively, Defendant negligently misrepresented the truth about its services and is liable for negligent misrepresentation.

167.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

168.    As a direct and proximate result of the actions of CryoStork as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress and monetary damages.

169.    Plaintiffs request judgment against Defendant for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## FOURTEENTH CAUSE OF ACTION - BREACH OF CONTRACT – MORGAN FERTILITY

170.    Plaintiffs re-allege each and every allegation of this Complaint.

171.    Morgan Fertility entered into a contract with Plaintiffs for the performance of IVF services, including those outlined above.

172.    Morgan Fertility breached this contract by failing to provide the services as represented, making warranties and promises they did not keep as identified above in the factual allegations. Morgan Fertility breached its contract with Plaintiffs in the following ways:

a)  Failing to safeguard the Melones' frozen embryo.

b)  Relying on antiquated manual systems for labeling, tracking, storing, and transporting frozen embryos.

c)  Failing to implement software and hardware technology to store, trace and maintain frozen embryos.

d)  Failing to safely store the Melones' frozen embryo.

e)  Misrepresenting and falsely advertising the nature and quality of its services to induce Plaintiffs to enter into a contract.

173.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

174.    As a direct and proximate result of Morgan Fertility's breach of contract and express warranties as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

175.    Plaintiffs request judgment against Defendant for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## FIFTEENTH CAUSE OF ACTION - BREACH OF CONTRACT – CRYOSTORK

176.    Plaintiffs re-allege each and every allegation of this Complaint.

177.    CryoStork entered into a medical transportation contract with the Melones.

178.    This contract is void as against public policy.

179.    Alternatively, CryoStork breached this contract by failing to provide the services as represented, making warranties and promises they failed to keep as identified above in the factual allegations. Cryostork breached its contract with Plaintiffs in the following ways:

a)  Failing to safeguard the Melones' frozen embryos.

b)  Failing to safely transport Plaintiff's frozen embryos to Shady Grove.

c)  Misrepresenting and falsely advertising the nature and quality of its services to induce Plaintiffs to enter into a contract.

180.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

181.    As a direct and proximate result of CryoStork's breach of contract and express warranties as set forth above, Plaintiffs suffered severe and permanent harm and losses, including physical pain, emotional distress, the loss of irreplaceable property, and monetary damages.

182.    Plaintiffs request judgment against Defendant for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## SIXTEENTH CAUSE OF ACTION – MEDICAL MALPRACTICE – THE MORGAN DEFENDANTS

183.    Plaintiffs re-allege each and every allegation of this Complaint.

184.    The Melones sought professional medical care from the Morgan Defendants. The Morgan Defendants represented that Morgan Fertility and its agents, employees, contractors, and

assigns were competent to perform and render the medical care, treatment, services, and advice sought by the Melones.

185.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

186.    The Morgan Defendants rendered medical care, treatment, and services, to the Melones including medical consultations, medically preparing Kara's body for egg retrieval, and performing the egg retrieval, fertilization, blastocyst development, and preservation processes.

187.    The Morgan Defendants rendered medical care, including consultation, services, and retrieval and preservation processes, carelessly, unskillfully, negligently, and not in accordance with accepted standards of medical care.

188.    Because of the Morgan Defendants' conduct, the Melones suffered severe and permanent harm and losses, including physical pain, emotional distress and monetary damages.

189.    Plaintiffs request judgment against Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## SEVENTEENTH CAUSE OF ACTION – MEDICAL MALPRACTICE – CRYOSTORK

190.    Plaintiffs re-allege each and every allegation of this Complaint.

191.    CryoStork's medical transportation services require specialized medical knowledge.

192.    The Melones sought professional medical care from CryoStork by way of its medical transportation services. Cryostork represented that it and its agents, employees, contractors, and assigns were competent to perform and render the medical care, services, and advice sought by the Melones.

193.    CryoStork rendered medical care and services to the Melones including medical transportation services and advice.

194.    CryoStork rendered this medical care and services, carelessly, unskillfully, negligently, and not in accordance with accepted standards of medical care.

195.    Because of CryoStork's conduct, the Melones suffered severe and permanent harm and losses, including physical pain, emotional distress and monetary damages.

196.    Plaintiffs request judgment against Defendant for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## EIGHTEENTH CAUSE OF ACTION – PUNITIVE DAMAGES

197.    Plaintiffs re-allege each and every allegation of this Complaint.

198.    The aforementioned acts of the collective Defendants were outrageous and performed willfully, wantonly and with complete disregard to the Plaintiffs' rights and in reckless indifference to the rights of others and specifically the Plaintiffs, and those acts further shocked the conscience of the community.

199.    Plaintiffs invoke the doctrines of Respondeat Superior, Ostensible Agency and Apparent Authority.

200.    As the direct and proximate result of the willful, wanton and outrageous conduct of all the Defendants named within this complaint, including, but not limited to, Morgan Fertility, CryoStork, Dr. Allen, Dr. Olcha, Dr. Lesorgen, Kelly Hynes, and Kerri King-Hurley, the Plaintiffs' embryo was fertilized, cryopreserved, stored, and/or transported improperly and ultimately destroyed.

201.    As a direct and proximate result of the willful, wanton and outrageous conduct of all named Defendants herein, now fully described as the Defendants' failure to properly fertilize,

cryopreserve, store, transport, and otherwise care for Plaintiffs' embryo, Plaintiffs have suffered serious, permanent emotional distress, depression, and have incurred significant expenses, as a result of the negligence of all of the named Defendants herein.

202.    Plaintiffs request judgment against Defendants, jointly and/or severally, to compensate for the pain, suffering and emotional distress that they suffered based on the intentional and outrageous conduct of all of the Defendants.  Plaintiffs request punitive damages pursuant to the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, together with other such relief as this court deems just and proper, under the circumstances, including interest, cost, and other damages.

## DAMAGES

203.    Plaintiffs re-allege each and every allegation of this Complaint and based on the foregoing, Plaintiffs demands judgment against all Defendants on each of the above-referenced claims and causes of action, for general and special damages, for the costs expended herein, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled, including, as follows:

a. Compensatory damages in excess of the jurisdictional amount, including pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action.

b. Compensatory damages to Plaintiffs for past and future damages Plaintiffs' pain and suffering and for severe and permanent personal harm and losses sustained by Plaintiffs including health care costs and economic loss.

c. Economic damages in the form of medical expenses, out of pocket expenses, travel and transportation expenses, lost earnings and other economic damages in an amount to be determined at trial of this action.

d. Punitive and/or exemplary damages for the wanton and willful disregard of Plaintiffs' rights in an amount sufficient to punish Defendants and to deter future similar conduct, to the extent allowed by applicable law.

e. Pre-judgment interest at the maximum rate allowed by law.

f. Post-judgment interest at the maximum rate allowed by law.

g. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

204.    Plaintiffs hereby demand a trial by jury as to all issues.

## PRAYER

WHEREFORE,  Plaintiffs pray for judgment against Defendants as follows:

1.  That the Court award Plaintiffs judgment against Defendants for past and future economic and non-economic damages;

2.  That the Court award all such other sums as shall be determined to fully and fairly compensate Plaintiffs for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiffs as the direct and proximate result of the acts and omissions of Defendants;

3.  That the Court award Plaintiffs costs, disbursements and reasonable attorneys' fees incurred;

4.  Pre- and post-judgment interest at the highest rate allowed by law;

5. That the Court award Plaintiffs the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

6. That the Court award such other and further relief as it deems necessary and proper in the circumstances.

Dated: June 13, 2023

Respectfully submitted,

By:   /s/ Christopher M. Placitella
Christopher M. Placitella, Esq.
(Bar No. 027781981)
Cplacitella@cprlaw.com
COHEN, PLACITELLA & ROTH
127 Maple Ave.
Red Bank, NJ 07701
Telephone: 732.747.9003
Facsimile: 732.747.9004
http://www.cprlaw.com

and

Leigh A. Joseph, Esq. (*Pro Hac Vice* Forthcoming)
**Hendler Flores Law, PLLC**
901 S. MoPac Expressway
Bldg. 1, Suite #300
Austin, Texas 78746
Tel: 512-439-3207| Fax: 512-439-3201
Ljoseph@hendlerlaw.com
www.hendlerlaw.com

Scott Hendler, Esq. (*Pro Hac Vice* Forthcoming)
CEO and Managing Partner
**Hendler Flores Law, PLLC**
901 S. MoPac Expressway
Building 1, Suite 300
Austin, Texas 78746
Tel: 512-439-3202 | Fax: 512-439-3201 |
shendler@hendlerlaw.com
www.hendlerlaw.com

Page 40 of 40