**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

KARA MELONE & PAUL MELONE,

        Plaintiffs,

        v.

CRYOPORT INC., *et al.*,

        Defendants.

---

Civil Action No. 23-3243 (MAS) (JBD)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon the filing of two separate motions to dismiss: (1) Defendant Cryoport Inc. d/b/a CryoStork's ("CryoStork") motion to dismiss (ECF No. 34); and (2) Defendants Shore Institute for Reproductive Medicine, P.C.'s ("Morgan Fertility"), Kiernan Trebach LLP ("Kiernan"), Allen Morgan, M.D. ("Morgan"), Meir Locha, M.D. ("Locha"), Kelly Hynes, LPN ("Hynes"), and Kerri King-Hurley's ("King-Hurley") (collectively the "Morgan Defendants," and collectively with Cryoport, "Defendants") motion to dismiss (ECF No. 35). Plaintiffs Kara Melone ("Mrs. Melone") and Paul Melone ("Mr. Melone") (collectively "Plaintiffs") opposed both motions (ECF Nos. 37, 38), and Defendants separately replied (ECF Nos. 40, 41). After careful consideration of the parties' submissions, the Court decides Defendants' motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, CryoStork's motion to dismiss (ECF No. 34) is granted, and the Morgan Defendants' motion to dismiss (ECF No. 35) is granted in part and denied in part.

I.      **BACKGROUND**[1]

Plaintiffs are a couple currently residing in Virginia. (Am. Compl. ¶¶ 1, 2, 23, ECF No. 32.) In January 2017, Plaintiffs, after struggling with infertility while seeking to start a family, sought assistive reproductive technology. (*Id.* ¶ 23.) To this end, Plaintiffs ultimately selected Morgan Fertility as their in vitro fertilization ("IVF") provider. (*Id.* ¶¶ 23, 24.)

Plaintiffs selected Morgan Fertility in part due to representations on its website. (*See id.* ¶¶ 48-50.) Specifically, Plaintiffs relied on Morgan Fertility's statements that:

> At Morgan Fertility and Reproductive Medicine, everything we do is for your success. We are proud to be at the forefront of cutting-edge scientific advancements in successfully treating infertility. Our entire team is dedicated to providing to [sic] a compassionate patient care experience that exceeds expectations at every opportunity.

(*Id.* ¶ 48.) The website also stated: "[i]f you're searching for the best fertility or infertility clinic in [New Jersey], we'd like to introduce you to our clinical team [who oversee] the highest possible success rates." (*Id.* ¶ 49.)

On January 17, 2017, Morgan was able to successfully harvest "seven oocytes (eggs) from [Mrs.] Melone." (*Id.* ¶ 24.) Upon fertilization, three of Mrs. Melone's harvested eggs reached the blastocyst stage and were cryogenically preserved for use in IVF. (*Id.*) These embryos were cryopreserved on the tip of a "straw."[2] (*Id.* ¶ 25.) Eventually, two of these cryogenically preserved embryos were successfully thawed and implanted, resulting in two successful pregnancies and live births in March 2017 and March 2019 respectively. (*Id.* ¶ 26.)

---

[1] In considering the instant motions, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Plaintiffs provided a photograph of a small pink medical device, referred to as a "straw," in support of this allegation. (Am. Compl. ¶ 25.)

In January 2020, Plaintiffs relocated their young family to Richmond, Virginia. (*Id.* ¶ 27.) With one cryopreserved embryo remaining with Morgan Fertility, Plaintiffs established care at Shady Grove Fertility ("Shady Grove") for their sole remaining IVF procedure. (*Id.*) Before care was established, Shady Grove obtained Morgan's records, reviewed them, and determined that Morgan Fertility's systems were compatible with Shady Grove's, such that Shady Grove could thaw and transfer the remaining embryo safely. (*Id.* ¶ 29.) As such, preparations began for moving the last remaining embryo from Morgan's facility in New Jersey to Shady Grove in Virginia. (*Id.* ¶¶ 30-31.) During this preparation for transport, a Morgan Defendant stored the embryo in the same tank as other embryos; that tank was open and closed repeatedly between the time the embryos were preserved and the time the embryo was transferred to Shady Grove.[3] (*Id.* ¶ 32.)

To transport the embryo, Plaintiffs engaged CryoStork, a specialty facilitator of medical shipping services. (*Id.* ¶ 34.) CryoStork agreed to ship the embryo from Morgan Fertility to Shady Grove, with the embryo intended to be picked up on March 9, 2021 and delivered to Shady Grove by March 10, 2021.[4] (*Id.* ¶ 38.) Ultimately, however, CryoStork documentation reflects that the transport took two days instead of one, with the embryo picked up on March 8, 2021 and delivered on March 10, 2021. (*Id.* ¶ 39.) Additionally, CryoStork's shipping container's temperature was not kept constant. (*Id.* ¶ 40.) Instead, over the two-day transportation period, the container experienced ten-degree fluctuations in temperature. (*Id.*) Nevertheless, on March 10, 2021, Shady Grove received what it believed to be Plaintiffs' intact embryo frozen in a straw. (*Id.* ¶ 43.)

---

[3] King-Hurley, an embryologist at Morgan Fertility, monitored Plaintiffs' embryos throughout Plaintiffs' time with Morgan Fertility. (Am. Compl. ¶ 33.)

[4] The contract between Plaintiffs and CryoStork provided a limitation period of one year from the date of Plaintiffs' order wherein Plaintiffs could initiate an action against CryoStork. (*See generally* Terms and Conditions, ECF No. 34-4.) The terms and conditions referenced in the contract also provide that California law shall govern the contract between the parties. (*Id.*)

On the date of Mrs. Melone's scheduled IVF transfer, June 14, 2021, Shady Grove informed her that, despite the efforts of three separate embryologists, it was unable to find an embryo to recover from the straw. (*Id.* ¶ 46.) Shady Grove noted to Plaintiffs, however, that its embryologists identified "irregular sealing on the straw" and believed that the loss and damage to the embryo occurred at Morgan Facility. (*Id.*) Prior to June 14, 2021, Plaintiffs had no means of knowing their embryo was lost or destroyed. (*Id.* ¶ 47.) No Defendant ever officially explained why Plaintiffs' remaining embryo was lost or destroyed. (*Id.* ¶ 51.)

Accordingly, on June 13, 2023, Plaintiffs filed their initial Complaint against Defendants in this Court. (ECF No. 1.) On September 5, 2023, Plaintiffs filed an Amended Complaint (ECF No. 32), and Defendants filed motions to dismiss shortly thereafter (ECF Nos. 34, 35). Plaintiffs responded to both motions to dismiss (ECF Nos. 37, 38), and Defendants replied (ECF Nos. 40, 41). The Court now considers Defendants' contentions as to why Plaintiffs' Amended Complaint should be dismissed.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[5] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of

---

[5] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   <u>DISCUSSION</u>

For the reasons set forth below, CryoStork's motion to dismiss all claims against it is granted, and the Morgan Defendants' motion to dismiss the claims against them is granted in part and denied in part. The Court addresses each motion in turn.

### A.   **CryoStork's Motion to Dismiss**

CryoStork challenges Plaintiffs' Amended Complaint on three grounds: (1) CryoStork contends that "Plaintiffs' claims are time barred by the express terms of the contract between Cryo[Stork] and Plaintiffs" (the "Contract"); (2) CryoStork maintains that Plaintiffs' claims are barred by a liability waiver included in the Contract; and (3) CryoStork contends that even if Plaintiffs' claims are not barred, "Plaintiffs fails to state any claim against Cryo[Stork] upon which relief can be granted." (CryoStork's Moving Br. 1, ECF No. 34-1.)

In assessing CryoStork's contentions, this Court must first evaluate whether and to what extent it can consider the Contract. In the Third Circuit, a court may consider a "document integral to or explicitly relied upon in the complaint . . . without converting [a] motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (second alteration in original) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1120 (1st Cir. 1996)). Plaintiffs bring a breach of contract action against CryoStork and refer to the Contract throughout the Amended Complaint to affirmatively state that the Contract contained unconscionable terms rendering its provisions unenforceable against Plaintiffs. (Am. Compl. ¶ 125.) As such, Plaintiffs put the Contract directly in dispute, and accordingly, the Court may consider the Contract and its terms at this stage.

Next, the Court considers CryoStork's first contention: whether the Contract, in fact, time bars Plaintiffs' claims. Notably, the Contract explicitly directs potential signatories to Cryoport, Inc.'s ("Cryoport") terms and conditions posted on Cryoport's website. (Contract, ECF No. 34-3.) The Contract then asks that before signing, signatories attest that they "have read . . . acknowledge, and . . . hereby accept" those terms offered and posted on the Cryoport website. (*Id.*) One such term is entitled "Limitations on Legal Actions" (the "Limitations Provision"). (Terms and Conditions *10.[6]) This provision states that:

> Any right [a] [c]ustomer might have to damages, refunds, credits, recovery of reliance interests, disgorgement, restitution, injunctive relief, declaratory relief or any other legal or equitable relief whatsoever against Cryoport under any cause of action arising from any [o]rder shall be extinguished unless you file an action *within one year from the date of such [o]rder*.

---

[6] Page numbers preceded by an asterisk correspond to the page number provided at the top of the ECF header.

(*Id.* (emphasis added).)[7]

Notably, Plaintiffs' "order," i.e. the Contract, was allegedly entered into sometime prior to March 10, 2021. (*See* Am. Compl. ¶ 38.) This action was not initiated, however, until June 13, 2023—over two years after Plaintiffs entered into the Contract and more than one year after the Contract's limitations period expired. (*See* Terms and Conditions *10; Original Complaint, ECF No. 1.) Thus, by the language set forth in the Contract, so long as the Limitations Provision is reasonable and enforceable, Plaintiffs' claims against CryoStork are time barred.

The Limitations Provision is reasonable. "[I]t is well settled that parties may contractually limit the time for bringing claims, despite a statute of limitations to the contrary." *Smith v. TA Operating LLC*, No. 10-2563, 2011 WL 3667507, at *3 (D.N.J. Aug. 19, 2011) (collecting cases). The only important caveat is that "[c]ontract provisions limiting the time parties may bring suit" must be themselves "reasonable." *Id.* (quoting *Eagle Fire Prot. Corp.*, 678 A.2d 699, 704 (N.J. 1996)). In New Jersey, one year is generally considered a "reasonable" limitation period and Plaintiffs provide no case law or argument suggesting the contrary. *See Martinez-Santiago v. Pub. Storage*, 38 F. Supp. 3d 500, 506-07 (D.N.J. 2014) (collecting cases); (*see generally* Pls.' CryoStork Opp'n Br., ECF No. 38.) Instead, Plaintiffs primarily contend that the Contract,

---

[7] The terms and conditions also dictate that they shall be "construed in accordance with the law of the State of California without regard to its conflict of law principles." (*Id.*) From this contractual language, CryoStork maintains that this Court should employ California law when assessing the enforceability of the Contract's limitations provision. (CryoStork's Moving Br. 5.) Nevertheless, CryoStork maintains, and Plaintiffs do not dispute, that no choice-of-law analysis is necessary here because the laws of California and New Jersey do not conflict and both New Jersey and California law apply the same enforceability standards. (CryoStork's Moving Br. 5-6; *see generally* Pls.' CryoStork Opp'n Br.) As such, out of an abundance of caution, the Court applies New Jersey law in assessing the Contract's enforceability as it is the law that Plaintiffs brief that is presumably less favorable to CryoStork. (*See generally* Pls.' CryoStork Opp'n Br.)

including its Limitations Provision, is unenforceable because it is unconscionable. (Pls.' CryoStork Opp'n Br. *8-12.)

Plaintiffs fail to adequately allege facts to support an unconscionability finding. It is certainly true, as Plaintiffs suggest, that "courts may refuse to enforce contracts, or discrete contract provisions, that are unconscionable." *Bowen v. Hyundai Motor Am.*, No. 15-6942, 2016 WL 3466085, at *3 (D.N.J. June 22, 2016) (quoting *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 541 (N.J. 2016)). Traditionally, under New Jersey law, there are two forms of unconscionability: (1) procedural; and (2) substantive. *Muhammad v. Cnty. Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 97 (N.J. 2006) (citation omitted). Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.* at 96 (quoting *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 920-22 (N.J. Ch. Div. 2002)); *Rodriguez*, 138 A.3d at 541. Substantive unconscionability, on the other hand, "generally involves harsh or unfair one-sided terms." *Id.* (quoting *Sitogum*, 800 A.2d at 920-22).

Here, Plaintiffs summarily allege that the Contract "contains unconscionable limitations on Plaintiffs' damages and statute of limitations," and that "the [C]ontract is void or voidable as against public policy." (Am. Compl. ¶¶ 198-99.) Unfortunately, Plaintiffs' briefing offers little direction as to what facts in the Amended Complaint might support a finding that the Limitations Provision violates public policy or constitutes an unconscionable limitation. (*See generally* Pls.' CryoStork Opp'n Br.) As far as the Court can infer from Plaintiffs' briefing, Plaintiffs contend that

the Contract is unconscionable because: (1) the Contract is a contract of adhesion[8]; (2) the Contract's terms being imposed in the highly sensitive fertility industry would be against public policy; and (3) the terms and conditions in the Contract were inconspicuous. (Pls.' CryoStork Opp'n Br. *17-19; Pls.' Am. Compl. ¶¶ 61-62.)

First, as to Plaintiffs' contention that the Contract was a contract of adhesion, such contracts are not per se unconscionable. *Vitale v. Schering-Plough Corp.*, 174 A.3d 973, 980 (N.J. 2017) (citing *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 687 (N.J. 2010)). Therefore, simply identifying that a given contract is a contract of adhesion, which Plaintiffs do not allege but only imply in their opposition brief, is insufficient at this stage for a court to assess an unconscionability contention. (*See* Pls.' CryoStork Opp'n Br. *17-19; *see generally* Am. Compl.)

Second, Plaintiffs' contention that the Limitations Provision violates public policy due to the uniquely sensitive nature of the fertility industry is unsupported by sufficient argument or allegations. (*See* Am. Compl. ¶¶ 61, 62; Pls.' CryoStork Opp'n Br.) Plaintiffs do not elaborate or cite case law showing that adhesion contracts pertaining to highly sensitive subject matters can be considered unconscionable. (*See generally* Pls.' CryoStork Opp'n Br.); *United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments . . . Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Moreover, to the extent that Plaintiffs appear to suggest that there is a "vast disparity in bargaining power between the parties" in the fertility industry, the

---

[8] Plaintiffs do not allege that the Contract is a contract of adhesion or specific facts to maintain this contention in their Amended Complaint. (*See generally* Am. Compl.) This failure alone is enough for the Court to reject Plaintiffs' unconscionability contentions. *See* Fed. R. Civ. P. 8(a). Out of an abundance of caution, however, the Court briefly considers Plaintiffs' adhesion contract contention.

argument is unpersuasive—the fertility industry is hardly the only industry where businesses have superior bargaining power over customers. (Pls.' CryoStork Opp'n Br. *18.) Regardless, even if the Court accepts that there is a unique bargaining power disparity in the fertility industry, superior bargaining power or sophistication by one party itself does not render a contract unenforceable. *Bowen*, 2016 WL 3466085, at *3. For these reasons, Plaintiffs' second contention regarding unconscionability is rejected.

Third, and finally, Plaintiffs suggest that the terms and conditions embedded in the Contract are inconspicuous. (Pls.' CryoStork Opp'n Br. *18.) Plaintiffs, once again, fail to include this allegation in their Amended Complaint. (*See generally* Am. Compl.) Rather, Plaintiffs suggest this contention, for the first time, in their opposition brief. (Pls.' CryoStork Opp'n Br. *18-19); *see also In re Burlington*, 114 F.3d at 1424 (finding that a district court cannot "go beyond the facts alleged in the [c]omplaint" when ruling on a motion to dismiss). Additionally, as with Plaintiffs' public policy contention above, Plaintiffs provide no case law to substantiate their assertion that the Limitations Provision is inconspicuous, nor do they make any legal argument as to why the allegedly inconspicuous features of the Contract are, in fact, legally insufficient. (*See id.*) The Court, therefore, rejects Plaintiffs' final contention as to unconscionability.

The Court need not delve into Plaintiffs' other unconscionability contentions because even if the Court were to find other provisions unconscionable, Plaintiffs' failure to establish that the Limitations Provision is unconscionable ends the Court's analysis. This is because a severability clause in the Contract dictates that if any provision is deemed invalid by a court, other legally

enforceable provisions are not invalidated.[9] *Barbour v. CIGNA Healthcare of N.J., Inc.*, No. 02-417, 2003 WL 21026710, at *6 (D.N.J. Mar. 4, 2003) ("In New Jersey, severability clauses are enforceable; the courts have consistently held that a 'contract which includes some prohibited parts is enforceable as to its valid provisions, if the prohibited and the valid provisions are severable.'" (quoting *Campi v. Seven Haven Realty Co.*, 682 A.2d 281, 285 (N.J. Sup. Ct. Law Div. 1996))); (*See* Pls.' CryoStork Opp'n Br. at *19 (challenging, in part, a damages provision within the terms and conditions).) As Plaintiffs make no argument that the severability provision in the terms and conditions is unenforceable, and because the Court finds that the Limitations Provision is enforceable, Plaintiffs' other unconscionability contentions are inapposite because the Limitations Provision operates to bar any claims under the Contract.

Accordingly, for the reasons outlined above, the Limitations Provision is reasonable and enforceable against Plaintiffs. The Court, therefore, finds that Plaintiffs failed to timely bring their claims against CryoStork. As such, CryoStork's motion to dismiss is granted as to all claims.

### B.     The Morgan Defendants' Motion to Dismiss

In moving to dismiss the allegations against them in the Amended Complaint, the Morgan Defendants leverage several contentions including that: (1) Plaintiffs' gross negligence (Count Two), willful and wanton misconduct (Count Three), and reckless misconduct (Count Four) claims

---

[9] The severability language in the Contract's terms and conditions reads as follows:

> If any of the provisions in these [t]erms and [c]onditions are held to be in violation of applicable law or applicable court decision, then such provisions are hereby waived or amended to the extent necessary to achieve the same economic effect for the [t]erms and [c]onditions to be enforceable in such jurisdiction and the rest of this the [sic] [t]erms and [c]onditions shall remain in full force and effect.

(Terms and Conditions *10.)

are factually unsupported; (2) Plaintiffs fail to adequately allege facts to show reckless indifference such that the imposition of punitive damages would be appropriate; (3) Plaintiffs' negligent infliction of emotional distress ("NIED") claim (Count Five) must be dismissed because they fail to provide facts sufficient to support the claim; (4) Plaintiffs' claim for fraud and deceit (Count Twelve) is not pled with particularity under Rule 9(b); and (5) Plaintiffs' claim for breach of contract (Count Fourteen) fails because Plaintiffs do not identify a specific contract or provision that was breached. (*See generally* Morgan Defs.' Moving Br., ECF No. 35.) The Court addresses each contention in turn.

> i.    *Whether the Amended Complaint contains sufficient factual allegations to support Plaintiffs' gross negligence, willful and wanton misconduct, and reckless misconduct claims (Counts Two, Three, Four).*

The Morgan Defendants' motion to dismiss Plaintiffs' gross negligence claim is denied, but the Morgan Defendants' motion to dismiss Plaintiffs' willful and wanton misconduct and reckless misconduct claims is granted.

### 1.    Gross Negligence (Count Two)

Plaintiffs adequately allege specific facts to support a gross negligence claim against the Morgan Defendants. In fact, Plaintiffs supply thirteen specific factual allegations that support a finding of gross negligence in this case. (Am. Compl. ¶ 76 (listing, for example, that the Morgan Defendants failed to: (1) "exercise slight care or diligence to properly store [Plaintiffs'] frozen embryo"; (2) "exercise slight care or diligence to promulgate and follow rules and procedures for the proper handling and labeling of frozen embryos"; and (3) "exercise slight care or diligence to securely and safely package [Plaintiffs'] embryo for transport").) The Morgan Defendants contend, however, that these enumerated allegations are merely a recitation of Plaintiffs' ordinary negligence contentions with the addition of the phrase "slight care." (Morgan Defs.' Moving Br.

*7.) The Morgan Defendants maintain that the simple inclusion of this language does not transform Plaintiffs' ordinary negligence accusations into allegations sufficient to support a gross negligence or reckless indifference finding, which require, respectively, allegations regarding "indifference to" or "thoughtless disregard of" consequences. (*See id.* at *6-7.)

The Court rejects the suggestion by the Morgan Defendants that the same common core of facts cannot support both a gross negligence and a negligence claim. To the contrary, the difference between ordinary negligence and gross negligence is only a matter of degree. *See Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) ("[N]egligence, gross negligence, recklessness, and willful conduct fall on a spectrum, and the difference between negligence and gross negligence is a matter of degree."). Common sense dictates that determinations as to the degree of negligent conduct are necessarily fact questions best left in the providence of a factfinder so long as negligence is appropriately pled. *Ivy Hill Park Section III v. Smirnova*, 828 A.2d 343, 345-46 (N.J. Super. Ct. Law Div. 2003) (finding that gross negligence "is a matter of degree, and, as a matter of degree, is a matter for the finder of fact."). As Plaintiffs' negligence claim survives unchallenged, Plaintiffs' gross negligence claim so too survives. Accordingly, the Morgan Defendants' motion to dismiss Plaintiffs' gross negligence claim against them is denied.

### 2. Willful and Wanton Misconduct & Reckless Misconduct (Counts Three and Four)

Willful and wanton misconduct and reckless misconduct, on the other hand, require something more than negligence to be alleged. *See K.J. v. J.P.D.*, No. 20-14177, 2022 WL 4596717, at *8 (D.N.J. Sept. 30, 2022) ("Mental states for tort claims run on a continuum 'from (1) ordinary negligence, through (2) gross negligence, (3) willful and wanton misconduct, (4) reckless misconduct to (5) intentional misconduct." (quoting N.J. Model Jury Charge (Civil) 5.12 "Gross Negligence" (Mar. 2019))). To be precise, "[r]eckless conduct is 'the conscious

disregard . . . to a known or obvious risk of harm to another' [and] [w]illful misconduct implies an intentional deviation from a clear duty owed to another." *Steinberg*, 142 A.3d at 755 (third alteration in original) (citation omitted).

Plaintiffs do not plausibly allege conscious disregard or intent to deviate. (*See* Am. Compl. ¶¶ 81-103.) Plaintiffs provide only four sentences of argument in their briefing—Plaintiffs maintain that the Morgan Defendants have specialized knowledge of the services they offer, and therefore they are in a position to know that the "behavior alleged by Plaintiffs is likely to cause serious harm." (Pls.' Morgan Defs.' Moving Br. *12, ECF No. 37.) Plaintiffs maintain that the Court can infer intent and conscious disregard where "the Morgan Defendants performed the alleged acts and omissions" in light of this specialized knowledge. (*Id.*)

Plaintiffs' allegations are insufficient to support either a willful and wanton misconduct or reckless misconduct claim. Whereas with gross negligence, discovery may show that ordinary negligence rose to the level of gross negligence because the difference between the two is a matter of degree, the same is not true as between gross negligence and willful and wanton or reckless misconduct. *Steinberg*, 142 A.3d at 755 ("To be clear, reckless and willful conduct are degrees of civil culpability *greater* than gross negligence . . . [and only] the difference between negligence and gross negligence is a matter of degree." (emphasis added)). As such, unlike with gross negligence, the same facts that support a finding of ordinary negligence do not necessarily support a finding of willful and wanton or reckless misconduct. *See id.*

Here, Plaintiffs recite only conclusory allegations to support their willful and wanton and reckless misconduct claims. (*See* Am. Compl. ¶¶ 81-103.) In fact, Plaintiffs' willful and wanton and reckless misconduct allegations largely mirror Plaintiffs' ordinary negligence allegations, albeit with key words changed to contort the same basic allegations to better fit a willfulness or

recklessness standard. (*Compare id.* ¶ 65 (alleging in support of Plaintiffs' negligence claim that the Morgan Defendants "fail[ed] to securely and safely package [Plaintiffs'] embryo for transport") *with id.* ¶ 88 (alleging in support of Plaintiffs' willful and wanton misconduct claim that the Morgan Defendants "deliberately fail[ed] to exercise a high degree of care befitting of a potential life when handling Plaintiffs' embryo) *and id.* ¶ 99 (alleging in support of Plaintiffs' reckless misconduct claim that the Morgan Defendants "[f]ail[ed] to securely and safely package [Plaintiffs'] embryo for transport in an extreme departure from the standard of care, thereby presenting a danger to the embryo that was either known or obvious to [the Morgan Defendants]).) Simply adding key terms before otherwise ordinary negligence allegations is insufficient to adequately allege willful and wanton and reckless misconduct because such claims require a degree of intentionality or awareness of harmful conduct, while ordinary negligence and gross negligence claims do not. *Steinberg*, 142 A.3d at 755 (citation omitted).

To this end, Plaintiffs' Amended Complaint is devoid of specific allegations that, if proven, might show "conscious disregard" or an "intentional deviation from a clear duty owed to another."[10] (*See generally* Am. Compl.); *see also Steinberg*, 142 A.3d at 755. For this reason, Plaintiffs' willful and wanton misconduct and reckless misconduct claims against the Morgan Defendants are dismissed.

---

[10] The Court also notes that Plaintiffs cite no case law to support the proposition that simply acquiring specialized knowledge in IVF automatically imputes intentional or conscious disregard upon a defendant when harm befalls a plaintiff engaging the defendant's services. (*See generally* Am. Compl.)

> ii.   *Whether the Amended Complaint contains sufficient factual allegations such that Plaintiffs can seek punitive damages.*

So long as Plaintiffs' willful and wanton and reckless misconduct claims remain dismissed, Plaintiffs are foreclosed from seeking punitive damages under the New Jersey Punitive Damages Act (the "NJPDA"). *See* N.J. Stat. Ann. 2A:15-5.12(a). Under the NJPDA:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. *This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.*

*Id.* (emphasis added).

Here, for the reasons outlined above, Plaintiffs adequately allege only ordinary negligence and gross negligence claims against the Morgan Defendants. (*See generally* Am. Compl. ¶¶ 63-103.) Accordingly, Plaintiffs cannot collect punitive damages from the Morgan Defendants under the NJPDA. As such, barring any successful amendments to the Amended Complaint by Plaintiffs, punitive damages are unattainable by Plaintiffs as against the Morgan Defendants.[11]

> iii.   *Whether Plaintiffs sufficiently pled an NIED claim* (*Count Five*).

In New Jersey, in order to prevail on an NIED claim, a plaintiff must show: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury

---

[11] The Court notes that "[p]unitive damages are a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves." *Szemple v. Rutgers Univ.*, No. 19-12746, 2020 WL 1444960, at *7 (D.N.J. Mar. 25, 2020) Thus, the most the Court can do at this stage is acknowledge that if Plaintiffs' willful and wanton misconduct and reckless misconduct claims remain dismissed, punitive damages will be unattainable. The Court will not and cannot, however, "dismiss with prejudice" Plaintiffs' punitive damages request as the Morgan Defendants desire because punitive damages are a remedy, not a claim. (Morgan Defs.' Moving Br. 8.)

at the scene of the accident; and (4) resulting severe emotional distress." *McDougall v. Lamm*, 48 A.3d 312, 318 (N.J. 2012) (quoting *Portree v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980)). Defendants contend that Plaintiffs fail to state an NIED claim because Plaintiffs cannot establish that the embryo was a "person." (Morgan Defs. Moving Br. 12.)

The Court need not reach whether the embryo constitutes a human life. Instead, the Court's analysis is straightforward. Even if the Court were to assume that the embryo in this matter was a human life sufficient to establish a "familial relationship," Plaintiffs fail to allege that they observed a death or an injury at the scene of the harm. (*See generally* Am. Compl.) Accordingly, Plaintiffs' NIED claim against the Morgan Defendants is dismissed.

> iv.   *Whether Plaintiffs' fraud allegations brought against Morgan Fertility are pled with the requisite particularity (Count Twelve).*

Plaintiffs fail to supply sufficient allegations to support their "Fraud and Deceit" Claim.

### 1. Common-Law Fraud

Plaintiffs' common-law fraud allegations against Morgan Fertility are insufficient under Rule 9(b). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where[,] and how of the events at issue.'" *SCP Distribs., LLC v. Nicholas Pools Inc.*, No. 22-6721, 2023 WL 6130635, at *4 (D.N.J. Sept. 19, 2023) (quoting *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)).

Importantly, a common-law fraud claim is subject to the Rule 9(b) heightened pleading standard. *See id.* at *5.

> [T]he five essential elements to a claim of common law fraud are:
> "(1) a material misrepresentation of a presently existing or past fact;
> (2) knowledge or belief by the defendant of its falsity; (3) an
> intention that the other person rely on it; (4) reasonable reliance
> thereon by the other person; and (5) resulting damages.

*Suarez v. E. Intern. Coll.*, 50 A.3d 75, 85 (N.J. Super. Ct. App. Div. 2012) (quoting *Gennari v. Weichart Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Plaintiffs' common-law fraud allegations against Morgan Fertility are insufficient under Rule 9(b) because they fail to provide the requisite level of specificity. Practically speaking, to survive under Rule 9(b), a plaintiff must: (1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent. *See SCP*, 2023 WL 6130635, at *4 (quoting *Majestic Blue Fisheries*, 812 F.3d at 307)); *see also Rheault v. Halma Holdings Inc.*, No. 23-700, 2023 WL 8005318, at *6 (D. Del. Nov. 7, 2023) (finding that in addition to outlining the where, when, and to whom fraudulent statements were made, under Rule 9(b), a plaintiff must also explain "what made [a] statement[] false").

Here, Plaintiffs identify a handful of allegedly false statements made by Morgan Fertility on its website. (*See* Am. Compl. ¶¶ 48, 49, 171); *see also Gennari*, 691 A.2d at 367. Specifically, Plaintiffs allege that Morgan Fertility stated that: "everything we do is for your success," "our entire team is dedicated to providing . . . compassionate patient care," and that it boasts "the highest possible success rates." (Am. Compl. ¶¶ 48, 49.) Crucially, however, Plaintiffs do not explain what makes these statements fraudulent.

To be clear, there are no facts that tend to suggest that any of the identified fraudulent statements are untrue. (*See id.* ¶¶ 48, 49.) Although Plaintiffs allege Morgan Fertility harmed them, that does not in and of itself suggest that Morgan Fertility's representations that it does everything

it can do to succeed, strives to provide compassionate care, and has high success rates, are per se false. (*Id.* ¶¶ 48-49.) Plaintiffs under Rule 9(b) must plead *why* these specific representations were untruthful. Fed. R. Civ. P. 9(b).

All other allegations pertaining to Morgan Fertility's alleged false statements are non-particularized and merely a recitation of one of Plaintiffs' negligence claims with the phrase "[f]alsely representing" added before it. (*See id.* ¶¶ 65, 171.) While Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," Fed. R. Civ. P. 9(b), "conclusory allegations are not sufficient to withstand Rule 9(b)." *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. 2012). In other words, when pleading intent and knowledge under Rule 9(b), "the complaint must still contain more than a 'conclusory allegation,' and the pleading must meet the 'less rigid—though still operative—strictures of Rule 8." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 103 n.15 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 686-87). Here, Plaintiffs simply conclude that Morgan Fertility's statements were fraudulent without any facts to explain why or how. (*See e.g.*, Am. Compl. ¶ 171 (stating that Morgan Fertility committed fraud by "falsely representing its ability to safeguard [Plaintiffs'] frozen embryos" but not identifying any *statement* or omission of fact that expressly represented this; the closest Plaintiffs come is the allegation that Morgan Fertility boasted "the highest possible success rates" which (1) does not purport to suggest Morgan Fertility makes no mistakes; and (2) does not appear to provide any assurance related to embryo transportation quality).) While Plaintiffs are justifiably distraught that their frozen embryo was lost, Rule 9(b) does not give a blanket license for litigants to generally assume fraud where negligence is an equally if not more likely culprit on the same facts. *See* Fed. R. Civ. P. 9(b).

Absent any particular allegations explaining *what* statements Morgan Fertility made that rise to the level of fraud, Plaintiffs' allegations cannot survive under Rule 9(b). Accordingly, Plaintiffs' common-law claim against Morgan Fertility is dismissed.

### 2.     Negligent Misrepresentation

While the Amended Complaint only identifies one fraud count against Morgan Fertility, Plaintiffs provide a passing reference to a negligent misrepresentation claim in bringing their fraud claim. (Am. Compl. ¶ 172 ("Alternatively, the actions and statements listed above constituted negligent misrepresentation by Morgan Fertility.").) Plaintiffs do not defend, argue, or otherwise mention negligent misrepresentation in their briefing other than to acknowledge that the Morgan Defendants argue against such a claim. (Pls.' Morgan Defs.' Opp'n Br. *19, ECF No. 37.) Such is insufficient pleading and briefing to survive Morgan Fertility's motion.

Even if Plaintiffs' negligent misrepresentation claim was properly identified, however, on the facts alleged, and for the same reasons outlined above, Plaintiffs' negligent misrepresentation claim is dismissed. To prove a negligent misrepresentation claim in New Jersey, a plaintiff must show: (1) an incorrect statement; (2) negligently made and justifiably relied upon; and (3) economic loss or injury sustained as a consequence of that reliance. *Green v. Morgan Props.*, 73 A.3d 478, 493 (N.J. 2013) (citations omitted).) Importantly, in the Third Circuit, negligent misrepresentation claims are also subject to the Rule 9(b) heightened pleading standard. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996)). As Plaintiffs' negligent misrepresentation claim and common-law fraud claim are supported by the exact same conclusory allegations, and because both are subject to Rule 9(b), Plaintiffs' conclusory common-law fraud allegations also cannot support a negligent misrepresentation claim. To be even more precise, Plaintiffs fail to identify

with particularity an "incorrect statement" that Morgan Fertility negligently made. *Green*, 73 A.3d at 493. Accordingly, absent the requisite particularity, Plaintiffs' negligent misrepresentation claim against Morgan Fertility is also dismissed.

> v.   *Whether Plaintiffs' breach of contract claim fails because they failed to identify a specific contract or provision that Morgan Defendants breached (Count Fourteen).*

Finally, the Morgan Defendants move to dismiss Plaintiffs' breach of contract claim because Plaintiffs fail to identify a specific contract or provision between the parties that was allegedly breached. (Morgan Defs.' Moving Br. 12-14.) In response, Plaintiffs maintain that they have "plausibly alleged breach of an implied-in-fact contract." (Pls.' Morgan Defs.' Opp'n Br. *21.)

Under New Jersey law, "[a] contract may be: (1) express, including oral or written[;] (2) implied-in-fact[;] and (3) implied-in-law." *Scagnelli v Schiavone*, 538 F. App'x 192, 193 (3d Cir. 2013) (citing *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996)). "[A]n 'implied-in-fact' contract 'is a true contract arising from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed. The agreement is rather inferred from the conduct of the parties." *Fittipaldi v. Monmouth Univ.*, No. 20-5526, 2021 WL 2210740, at *4 (D.N.J. June 1, 2021) (quoting *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004)). "Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances." *Wanaque*, 677 A.2d at 752 (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 4 cmt. a, 5 cmt. a (Am. L. Inst. 1979)). "Whether the parties acted in a manner sufficient to create implied contractual terms is a question of fact," and therefore, not appropriate for resolution at this stage absent a dearth of factual allegations. *See Troy v. Rutgers*, 774 A.2d 476, 483 (N.J. 2001) (citation omitted).

In alleging an implied-in-fact contract, Plaintiffs maintain that the Morgan Defendants represented that they would: (1) "take special care and precautions when harvesting, fertilizing, freezing, and storing Plaintiffs' genetic material"; (2) "safeguard Plaintiffs' frozen embryo and . . . not lose, mishandle, or destroy it"; and (3) "employ modern systems and technology to trace, maintain, label, track, store, and transport Plaintiff[s'] frozen embryo." (Pls.' Moving Br. *21; *see also* Am. Compl. ¶ 185.) As an initial matter, Plaintiffs do not allege that the *Morgan Defendants* made the above assurances. (Pls.' Moving Br. *20-21.) Rather, Plaintiffs allege that *Morgan Fertility* inferentially made the above promises. (Am. Compl. ¶ 185 (stating only that Morgan Fertility made the above representations).) As such, Plaintiffs' breach of contract claims against all Morgan Defendants except Morgan Fertility are dismissed.

As to Morgan Fertility individually, Plaintiffs allege that Morgan Fertility offered to take "special care and precautions" when handling Plaintiffs' embryo as evidenced by representations on Morgan Fertility's website and through "three different consent documents from Plaintiffs." (*See id.* ¶¶ 185-87.) The Morgan Defendants summarily deny that these facts are sufficient to allege an enforceable implied-in-fact contract. (*See generally* Morgan Defs.' Reply Br. *2-4, ECF No. 41.) The Court finds that in so contending, the Morgan Defendants fail to carry their burden on a motion to dismiss.

Specifically, the Morgan Defendants' briefing largely ignores or fails to persuasively defeat Plaintiffs' implied contract contentions. (*See* Morgan Defs.' Moving Br. *14-15 (providing case law which solely considers express contracts); Morgan Defs.' Reply Br. *2-4 (acknowledging Plaintiffs' implied breach of contract contention but again fixating on the lack of express agreement between the parties).) While the Morgan Defendants acknowledge that Plaintiffs aver certain consent documents coupled with website-based assurances created an implied-in-fact contract, the

Morgan Defendants shift the burden to Plaintiffs to establish why these facts "create an implied-in-fact contract." (Morgan Defs.' Reply Br. *3-4 (contending that "Plaintiffs do not cite to any law providing that a complaint can survive a Rule 12(b)(6) motion by simply conclusively stating that such a contract exists . . .").) Such is an improper burden shift at this stage. *Hedges*, 404 F.3d at 750 (finding that on a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." (citation omitted)).

To be clear, the Morgan Defendants fail to cite any case law to suggest that various representations on Morgan Fertility's website coupled with language suggesting a heightened duty of care in "three different consent documents" cannot serve as an offer that Plaintiffs accepted when they employed Morgan Fertility. (*See generally* Morgan Defs.' Moving Br. *13-15; Morgan Defs.' Reply Br. *2-4.) Importantly, however, the Morgan Defendants acknowledge that "[w]hether [the] parties acted in a manner sufficient to create an implied contract is generally a question of fact" not ripe for resolution at this stage. (Morgan Defs.' Moving Br. *3 (citing *Troy*, 774 A.2d at 483).) Absent an explanation from the Morgan Defendants as to why the law forecloses an implied contract on the facts alleged, the Morgan Defendants fail to carry their burden to establish that Plaintiffs' breach of contract claim against Morgan Fertility should be dismissed.[12]

---

[12] The Court notes that in so finding, it makes no finding as to whether, in fact, a valid and enforceable contract exists between Plaintiffs and Morgan Fertility, or whether any such contract was breached.

As such, the Morgan Defendants' motion to dismiss Plaintiffs' breach of contract claim against Morgan Fertility individually is denied.[13]

## IV.    <u>CONCLUSION</u>

For the reasons outlined above, CryoStork's motion to dismiss Plaintiffs' claims against it is granted in its entirety. The Morgan Defendants' motion to dismiss Plaintiffs' gross negligence claim (Count Two) is denied, and the Morgan Defendants' motion to dismiss Plaintiffs' willful and wanton misconduct (Count Three), reckless misconduct (Count Four), NIED (Count Five), and common-law fraud and negligent misrepresentation claim (Count Twelve) is granted. Finally, the Morgan Defendants' motion to dismiss Plaintiffs' breach of contract claim (Count Fourteen) is granted in part and denied in part.[14] An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[13] The Court briefly acknowledges the Morgan Defendants' motion to strike under Rule 12(f). (*See* Defs.' Moving Br. * 16-17.) Rule 12(f) motions to strike are disfavored in this district. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014); *see also DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 597 (D.N.J. 2015). Motions to strike, therefore, will "not be granted unless the presence of the surplusage will prejudice the adverse party." *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (quoting *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)). "[T]he Court's determination on a 'motion to strike under Rule 12(f) is discretionary.'" *Id.* (quoting *Hope Now*, 2011 WL 883202, at *1). Here, the Morgan Defendants move to strike language in the Amended Complaint discussing disparities in the fertility industry generally. (Morgan Defs.' Moving Br. 16-17; Am. Compl. ¶¶ 61-62.) The Morgan Defendants appear to maintain that this invites confusion of the issues because comments about the fertility industry generally are not necessarily applicable to the Morgan Defendants. (*See* Morgan Defs.' Moving Br at *16.) The Court disagrees that general comments about the industry are so prejudicial to the Morgan Defendants that the extraordinary measure of granting a motion to strike is necessary. Accordingly, the Morgan Defendants' motion to strike is denied.

[14] To be clear, the Morgan Defendants' motion to dismiss Plaintiffs' breach of contract claim is granted as to all Morgan Defendants except Morgan Fertility. Plaintiffs' breach of contract claim survives against only Morgan Fertility individually.